## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Andrew Howard, Jr., | ) | CASE NO.  1:12CV1661 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| Terry Tibbals, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Andrew Howard, Jr. ("Howard"), challenges the constitutionality of his conviction in the case of *State v. Howard*, Cuyahoga County Court of Common Pleas Case No. CR-06-484050.  Howard, *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 27, 2012.  (Doc. No. 1.)  On December 11, 2012, Warden Terry Tibbals ("Respondent") filed a Return of Writ.  (Doc.  No. 9.)  Howard did not file a Traverse.

For reasons set forth in detail below, it is recommended that Howard's Petition be DENIED.

### I.     Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state

appellate court summarized the facts underlying Monroe's conviction as follows:

> On April 26, 2006, the victim, Albert Sturdivant ("Sturdivant"), was shot and died of a single gunshot wound to the chest. The shooting occurred in the parking lot of an apartment building located at 883 Parkwood Avenue in Cleveland, Ohio.

> Witness, Donald Drake ("Drake"), stated that he was putting gas in a white minivan that was in the parking lot on the night of the murder. Drake further stated that he saw Howard in front of the van on the night of the shooting. [Rondalyn] Wynn lived at the Pentecostal Apartments in April 2006. Dennis Edwards ("Edwards") was Wynn's boyfriend at that time.  Wynn's apartment was on the first level and led to the door that allowed direct access to the parking lot. Wynn owned a car that was immobile and was parked in the lot. [FN1 Tr. 38.]

> At approximately 10:00 p.m. on April 26, 2006, Wynn and Edwards were lying in bed watching television.  They heard a loud crash and thought that someone might be trying to steal Wynn's car.  They jumped out of bed and ran to the back door of the apartment building that led directly to the parking lot.  When Wynn looked out the window of the back door, she saw a truck that had backed into her car and also saw an individual wearing a black hoodie running toward the back door.

> When Wynn saw the individual's face, she recognized him as Howard. As Howard approached the door, Wynn asked him if he was okay.  Wynn did not observe any other individuals in the lot at that time.  When Wynn walked around the crashed vehicles, she saw the truck doors open and witnessed a man who was having difficulty breathing, and his eyes were rolling toward the back of his head. Wynn then retrieved her cordless phone from her apartment window and called 9-1-1.  Wynn did not talk to the police at first when they arrived on the scene because "Andrew was still in the hallway while everything was going on." [FN2 Tr. 49.]

> Later in the evening, a detective from the Cleveland Police Department questioned Wynn about Howard being in the building.  Fearing retribution, Wynn originally denied that Howard was in the building.

> A few days after the shooting, and after the F.B.I. had been to the apartment building questioning witnesses, Wynn received a telephone message from Howard.  He indicated that Wynn needed to look for him because he was looking for her.  Wynn believed this to mean that she needed to talk to Howard before he found her.  Later in the same day, Wynn received a

second similar message from Howard.  After the telephone calls,Wynn, while en route to the store, saw Howard.  The two of them spoke, and Howard told Wynn that he killed the victim over $200.00. [FN3 Tr. 62.] Howard also told Wynn that he would kill whoever snitched on him.

Edwards stated that while standing at the back door, he saw people standing across the street.  He went back to the apartment to put on his shoes, and then returned to the parking lot.  Edwards stated that he walked toward the crash and saw a body.  Edwards also stated that he saw Howard later and Howard told him that "the brother tried to rob me." [FN4 Tr. 199.]

*State v. Howard*, 2010 WL 376811 at * 2.

## II.  Procedural History

### A.  Conviction and Sentence

On July 25, 2006, a Cuyahoga County Grand Jury charged Howard with (1) two counts of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01 together with felony specifications (Counts 1 and 2); (2) two counts of aggravated robbery in violation of O.R.C. § 2911.01 (Counts 3 and 4); and, (3) one count of having a weapon under disability in violation of O.R.C. § 2923.13 (Count 5).  The aggravated murder and aggravated robbery counts also included one and three year firearm specifications.  (Doc. No. 9-2.)  Howard pled not guilty on July 28, 2006.  (Doc. No.  9-3 at 22-23.)

On September 26, 2006, Howard filed a "Motion for Order Granting Defendant Grand Jury Transcript."  (Doc. No. 9-3 at 20.)  After conducting a hearing, the trial court granted Howard's motion.  (Doc. No. 9-3 at 19-20.)  Howard then filed a "Motion to Dismiss Indictment and/or Capital Specifications."  (Doc. No. 9-3 at 19.)  The trial court conducted a closed hearing on the motion and thereafter granted it in part, finding that "[b]ased upon the 'testimony' presented to the grand jury regarding the charge of aggravated robbery as a count and as felony murder

-3-

specification, the grand jury's probable cause determination to issue said indictments and specifications could not have been made free from undue influence of the prosecutor nor have been independently rendered." (Doc. No. 9-3 at 19.) Therefore, the court dismissed (1) the aggravated robbery counts (Counts 3 and 4); (2) one of the aggravated murder counts (Count 2); and (3) the felony specifications set forth in the remaining aggravated murder count (Count 1). (Doc. No. 9-3 at 19.)

On August 9, 2007, a jury trial commenced regarding the remaining murder charge (Count One), without the felony murder specification but including the two firearm specifications. (Doc. No. 9-3 at 13.) On that date, Howard moved to bifurcate proceedings relating to the weapons charge set forth in Count Five. (Doc. No. 9-3 at 13.) The trial court granted the motion and Howard entered a jury waiver as to that charge. (Doc. No. 9-3 at 13.)

On August 14, 2007, the trial court granted Howard's motion for mistrial "due to [an] irreconcilable breakdown in [the] attorney client relationship." (Doc. No. 9-3 at 12.) The following week, new defense counsel were appointed and the case was reassigned to a different trial court judge. (Doc. No. 9-3 at 10-11.)

On March 28, 2008, Howard waived his right to a jury trial. (Doc. No. 9-3 at 8.) A bench trial commenced on April 7, 2008. (Doc. No. 9-3 at 6-7.) The State rested on April 9, 2008, and Howard moved for acquittal under Ohio Crim. R 29. (Doc. No. 9-3 at 6-7.) The trial court denied the motion. (Doc. No. 9-3 at 7.)

On April 21, 2008, the trial court found Howard guilty of the lesser included offense of murder in violation of O.R.C. § 2903.02, inclusive of the firearm specifications; and, guilty of having a weapon while under a disability in violation of O.R.C. § 2923.13. (Doc. No. 9-3 at 6.)

-4-

The court noted that, pursuant to the previous trial judge's order, Counts Two through Four of the indictment, and the felony murder specification on Count One, were dismissed.  (Doc. No. 9-3 at 6.)  On May 19, 2008, with respect to murder conviction, the trial court sentenced Howard to life in prison with parole eligibility after fifteen years to be served consecutive to three (3) years "on the firearm specification in Count 1."  (Doc. No. 9-4.)  Howard was also sentenced to five years on the weapons conviction, to be served concurrently.  (Doc. No. 9-4.)  The court's sentencing entry also provided that "post-release control is part of this prison sentence for 5 years for the above felony(s) under R.C. 2967.28." (Doc. No. 9-4.)

**B.  Direct Appeal**

On June 16, 2008, Howard, through counsel,[1] filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court"), raising the following assignment of error:

> The state failed to present sufficient evidence to sustain appellant's conviction, and the court erred in denying the appellant's Rule 29 Motion for Acquittal, in violation of appellant's right to Due Process, as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. No. 9-9 at 2.)

On April 8, 2009, the state appellate court *sua sponte* remanded the case to the trial court for re-sentencing in compliance with *State v. Baker*, 119 Ohio St.3d 197 (2008).  (Doc. No. 9-10.)  Specifically, the appellate court found that "in this case, the [trial] court's [sentencing] entry did not provide a sentence for the one-year firearm specifications or state that for purposes of sentencing the two specifications are merged.  Without one entry resolving everything as specified

---

[1]  Howard was represented on appeal by his second trial counsel.

-5-

by *Baker*, there is no final appealable order." (Doc. No. 9-10.)  Pursuant to this order, the trial

court issued a corrected sentencing entry on April 17, 2009, in which it imposed the same sentence

but expressly noted that "all firearm specifications [are] merged for sentencing." (Doc. No. 9-11.)

The matter then returned to the state appellate court, and the State filed its brief with leave of

court on December 14, 2009. (Doc. No. 9-12.)  On February 4, 2010, Howard's conviction and

sentence were affirmed. *State v. Howard*, 2010 WL 376811 (Ohio App. 8th Dist. Feb. 4, 2010).

*See also* Doc. No. 9-13.

Howard filed a timely Notice of Appeal to the Ohio Supreme Court on April 2, 2010, raising

the following Proposition of Law:

> The trial court cannot convict a defendant, where, as was the case here, the
> State failed to present sufficient evidence to sustain a conviction, because to do
> so is in violation of that defendant's right to Due Process, as guaranteed by
> Article I, Section 10 of the Ohio Constitution, and the Sixth and Fourteenth
> Amendments to the United States Constitution.

(Doc. Nos. 9-15, 9-16.)  On June 23, 2010, leave to appeal was denied. *State v. Howard*, 125

Ohio St.3d 1463 (2010). *See also* Doc. No. 9-17.  Howard did not seek review in the United

States Supreme Court.

## C.  Second Sentencing Correction

On November 5, 2010, Howard filed in the state trial court a *pro se* Motion to Vacate Void

Judgment, arguing that the court failed to impose the correct term of post-release control in its

original May 19, 2008 sentencing entry. (Doc. No. 9-18.)  The State filed its response on

November 29, 2010, in which it conceded that the five year term of post-release control was in

error and argued the court should impose a mandatory three year term of post-release control

instead. (Doc. No. 9-19.)

On February 17, 2011, the trial court conducted a hearing by video on Howard's motion.  It then issued an Entry (journalized on February 23, 2011) correcting its earlier sentencing entry so as to reduce the post-release control sanction to a period of three years.  (Doc. No. 9-20.)   Howard did not appeal from this judgment.  In addition, the record reflects Howard did not pursue post-conviction relief or seek to re-open his appeal pursuant to Ohio App. R. 26(B).[2]

### D.  Federal Habeas Petition

On June 27, 2012, Howard filed a Petition for Writ of Habeas Corpus and asserted the following four grounds for relief:

**GROUND ONE**

"Hearsay Evidence/circumstantial evidence are not the same"

**GROUND TWO**

"Ineffectiveness of Trial Counsel"

**GROUND THREE**

"Withheld exculpatory evidence/witness not subpoenaed at trial."

**GROUND FOUR**

"Violation of Due Process/14th Amendment and 6th Amendment by Prosecutor, Trial Attorney, and Judge."

(Doc. No. 1-1 at 1.)

### III.  Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

---

[2]  As discussed in greater detail *infra*, the Cuyahoga County docket reflects that Howard filed another Motion to Correct Void Sentence in the state trial court on June 14, 2013. *See State v. Howard*, Cuyahoga County Case No. CR-06-484050.  This motion remains pending as of the date of this Report & Recommendation.

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

### A.  One-Year Limitation

In the instant action, Respondent contends the Petition is time-barred because Howard's conviction and sentence became final under 28 U.S.C. § 2244(d)(1)(A) on March 26, 2011, when the thirty (30) day period in which he could have filed an appeal from the trial court's February 23,

2011 corrected sentencing entry expired.[3]  Because "Howard executed the petition and presumably placed it in the prison's mail system"on June 18, 2012 (Doc. No. 1 at 7), Respondent argues the Petition is untimely as it was filed approximately three (3) months after the statute of limitations expired.  (Doc. No. 9 at 12.)  Howard did not file a Traverse and, thus, does not directly address Respondent's argument that the Petition is statutorily time-barred.

As set forth above, the AEDPA establishes a general rule that there is a one-year statute of limitations for filing a habeas petition in federal court for persons in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  *See Mackey v. Warden, Lebanon Correctional Institution*, 2013 WL 1908890 at * 3 (6th Cir. May 9, 2013).  Subsection 2244(d)(1)(A) indicates that the limitations period runs from the date on which the state court judgment becomes final by conclusion of direct review or the expiration of the time for seeking such review, whichever is later.  "For petitioners who do not pursue direct appeals in a state's highest court, judgments become final for purposes of § 2244(d)(1)(A) when the time for seeking discretionary review in the state's highest court expires."  *Mackey*, 2013 WL 1908890 at * 3 (citing *Gonzalez v. Thaler*, — U.S. ----, 132 S.Ct. 641, 653-54 (2012)).

Here, Howard was originally sentenced on May 19, 2008 and filed a timely notice of appeal to the state appellate court on June 16, 2008.  (Doc. Nos. 9-4, 9-7.)  After the state appellate court *sua sponte* remanded for re-sentencing in compliance with *Baker, supra*, the trial court issued a corrected sentencing entry on April 17, 2009 which clarified that "all firearm specifications [are] merged for sentencing."  (Doc. No. 9-11.)  The state appellate court thereafter affirmed Howard's

---

[3]  Pursuant to Ohio App. R. 4(A), an appeal must be filed within thirty (30) days of the entry of the judgment or order being appealed.

conviction and sentence on February 14, 2010. *State v. Howard*, 2010 WL 376811 (Ohio App. 8th Dist. Feb. 4, 2010). Howard filed a timely appeal, and the Ohio Supreme Court denied leave to appeal on June 23, 2010. *State v. Howard*, 125 Ohio St.3d 1463 (2010). He did not seek further review in the United States Supreme Court. On November 5, 2010, Howard filed a *pro se* Motion to Vacate Void Judgment in the state trial court. (Doc. No. 9-18.) The trial court conducted a hearing on the motion and, on February 23, 2011, issued a (second) corrected sentencing entry, reducing the post-release control sanction to a period of three (instead of five) years. (Doc. No. 9-20.)

Respondent contends the statute of limitations calculation is tied to the journalization of the second corrected sentencing entry on February 23, 2011. He argues that, pursuant to Ohio App. R. 4(a), Howard had thirty (30) days to seek review from this entry, i.e. until March 25, 2011. Howard did not appeal from this entry, however, and Respondent therefore asserts the statute of limitations began to run on March 26, 2011 and expired one year later on March 26, 2012. Howard did not file any application for state post-conviction or other collateral review that might potentially toll the one-year limitations period.[4] Because Howard signed the Petition on June 18, 2012 (84 days after the expiration of the statute of limitations), Respondent asserts it is time-barred under § 2244(d).[5]

---

[4] The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*

[5] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988). In cases

The Court agrees that the Petition is untimely.  As an initial matter, the Court is not convinced that Howard's February 23, 2011 re-sentencing affected the running the statute of limitations under § 2244(d).  When the trial court re-sentenced Howard in February 2011, it did so solely to impose the proper period of post-release control.  *See* Doc. No. 9-20 (stating "The Court hereby corrects its original sentence to correct the amount of PRC on Count 5.  The correct amount is 3 years PRC.")  As none of Howard's habeas grounds for relief challenge the imposition of post-release control, the February 2011 re-sentencing arguably did not affect the statute of limitations under § 2244(d).  *See Mackey*, 2013 WL at 1908890 at * 5-6 (where petitioner was re-sentenced to impose post-release control, Sixth Circuit finds re-sentencing did not affect the federal habeas statute of limitations because none of petitioner's grounds for relief claimed the imposition of post-release control was contrary to federal law).  Removing the February 2011 sentencing entry from the statute of limitations calculation, the limitations period herein would have commenced when the ninety (90) day time period for seeking United States Supreme Court review of the Ohio Supreme Court's June 23, 2010 judgment expired; i.e. on September 22, 2010. [6]  The one year limitations period, then, would have expired one year later on September 22, 2011.  As the Petition was not signed and filed until June 2012, it would clearly be time-barred.

---

where it is unclear when an inmate deposits legal documents with prison officials, courts have assumed that it was done on the date the document was purportedly signed.  *See Hollins v. Pineda*, 2012 WL 3023263 at * 3, fn 6 (N.D. Ohio May 30, 2012); *Porter v. Konteh*, 2009 WL 4282911 at * 5-7 (N.D. Ohio, Nov. 30, 2009); *United States v. Gray*, 182 F.3d 762, 766 (10th Cir. 1999).

[6] Supreme Court Rule 13 provides that "[a] petition for writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."

However, in light of Howard's *pro se* status, the Court will give him the benefit of the doubt and assume (as Respondent does) that the statute of limitations calculation is tied to the February 23, 2011 corrected sentencing entry.  Under this reasoning, the statute of limitations began to run on March 26, 2011 and expired on March 26, 2012.  Here, it is unclear when Howard delivered his *pro se* Petition to prison officials for mailing.  Again, giving him the benefit of the doubt, the Court assumes he did so on the date he signed the Petition; i.e. June 18, 2012.  (Doc. No. 1 at 7.)  *See Hollins*, 2012 WL 3023263 at * 3, fn 6.  As the Petition is considered filed on that date, the Court finds it was filed 84 days after the expiration of the statute of limitations period and is, therefore, untimely.  Accordingly, unless equitable tolling is appropriate or Howard is entitled to begin calculating the statute of limitations from an alternative date, his Petition should be dismissed as time-barred.[7]

---

[7]  According to the Cuyahoga County Court of Common Pleas docket, Howard filed a "Motion to Correct Void Sentence" on June 14, 2013. *See* Docket Sheet for  *State v. Howard*, Cuyahoga County Court of Common Pleas Case No. CR-06-484050.  Howard's motion appears to remain pending as of the date of this Opinion. This does not, however, affect the Court's conclusion that the Petition is statutorily time-barred.  Even if Howard's motion could be considered a "properly filed" application for post-conviction or other collateral relief, it cannot serve to toll a statute of limitations that had already expired before the motion was filed.  *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Here, at best, the statute of limitations expired on March 26, 2012.  Thus, Howard's June 14, 2013 Motion to Correct Void Sentence could not serve to revive the limitations period.  Moreover, even if the trial court were to ultimately grant Howard's motion and find that the February 2011 sentencing entry is void, it would not affect this Court's recommendation that the Petition be found to be time-barred.  The Sixth Circuit has rejected the argument that defects in state judgments "re-set the clock" under § 2244(d).  In *Frazier v. Moore*, 2007 WL 3037256 at * 4 (6th Cir. October 15, 2007), the petitioner argued the habeas statute of limitations had not run because his state court sentencing hearing was procedurally deficient under Ohio law. *Id*. at 4.  The Sixth Circuit rejected that argument, reasoning that a judgment can be cognizable under § 2254 and § 2244(d)(1) even when it is in violation of state law. *Id*. at 4-5. *See also Mackey*, 2013 WL 1908890 at * 4.  Thus, even if Howard successfully obtains yet another re-sentencing, it would not change the Court's conclusion that the Petition is

## B.  Factual Predicate

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date.  For the following reasons, it is recommended the Court find Howard has failed to establish that the statute of limitations commenced at a later date pursuant to this provision.

Howard's first habeas claim is that the testimony of material witness, Rondalyn Wynn, constitutes hearsay and is inconsistent with the testimony of other witnesses.  (Doc. No. 1-1 at 3.) He also argues Ms. Wynn lied on the stand and that her testimony only presented circumstantial evidence of his guilt.  (Doc. No. 1-1 at 3.)  As this ground relates entirely to Ms. Wynn's testimony at trial, the factual predicate of this claim would have been known to Howard at that time and cannot serve to delay the running of the statute of limitations under § 2244(d)(1)(D).

Howard's second claim (and parts of his fourth claim) allege ineffective assistance of trial counsel ("IAC").  The basis of this claim appears to be that defense counsel (1) fell asleep at trial; (2) arranged for his wife to send unidentified eye witnesses unspecified gifts; and, (3) failed to subpoena a witness, Stephanie Wells.  (Doc. No. 1-1 at 3-4.)  Howard's third claim (entitled "Withheld Exculpatory Evidence/Witness not subpoenaed at trial") also appears to relate to the fact that Ms. Wells did not testify at trial, although it is unclear if this claim is intended to raise an ineffective assistance of counsel ("IAC") claim, a claim under *Brady v. Maryland,* 373 U.S. 83 (1963), or both.  (Doc. No. 1-1 at 4.)  Howard does not argue that the factual predicate of these claims became known to him at some point in time after his conviction became final.  Indeed, if

time-barred under § 2244(d).

-13-

Howard's attorney was asleep at trial, Howard would certainly have been aware of that fact at the time of trial.  Further, there is nothing in either the Petition or the Exhibits attached thereto suggesting that, prior to the date upon which his conviction became final, Howard was unaware of the factual predicate underlying his IAC claim premised on the allegation that his "attorney's wife sent the eye witness gifts."

With respect to Howard's claims involving witness Stephanie Wells, Howard provides no explanation regarding the factual basis of these claims.  He does not describe who Ms. Wells is or what he believes she would have testified to at trial.[8]  Nor does he attach any affidavit or statement from Ms. Wells, thus leaving this Court with no way to gauge her potential significance to Howard's defense.  In one exhibit attached to his Petition, Howard appears to refer to Ms. Wells as an "alibi witness."  (Doc. No. 1-1 at 59.)  If Ms. Wells is indeed an alibi witness, Howard was presumably aware of her importance at the time of trial.  Thus, and in the absence of any meaningful argument to the contrary, the Court finds Howard has failed to demonstrate that the factual predicate of his claims involving Ms. Wells became known to him at some point in time after his conviction became final.[9]

Finally, Howard's fourth claim appears to also allege general, unspecified claims of prosecutorial misconduct and ethical violations by his defense attorney and the state trial court

---

[8]  During trial, Ms. Wynn testified that she believed Ms. Wells was Howard's girlfriend at the time of the crime.  (Tr. 53.)

[9] Howard also attaches to his Petition a copy of a "Motion to Compel Disclosure of Exculpatory Information" filed by his defense counsel in February 2007. Therein, defense counsel indicates that the State had identified Ms. Wells as a potential witness but had not provided her statement.  (Doc. No. 1-1 at 33-38.)  It is unclear whether this motion was ever ruled on the trial court.  Regardless, it does suggest that Howard was aware of Ms. Wells' potential significance at the time of trial.

-14-

judge.  (Doc. No. 1-1 at 4-5.)  In the absence of any argument to the contrary, the Court assumes these claims relate to allegedly objectionable conduct at trial.  As such, the factual predicate of these claims would have been known to Howard at that time and cannot serve to delay the running of the statute of limitations under § 2244(d)(1)(D).

Accordingly, the Court finds Howard has failed to identify any factual predicate that would justify a later start date of the statute of limitations.[10]

## C. Equitable Tolling

Although the Petition herein is untimely, the AEDPA statute of limitations period is also subject to equitable tolling.  *See Holland v. Florida*, ----- U.S. -----, 130 S.Ct. 2549, 2560 (2010).  Equitable tolling "allows courts to toll a statute of limitations when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010).  *See also Hall v. Warden, Lebanon Correctional Institution*, 662 F.3d 745, 749 (6th Cir. 2011).  However, the equitable tolling doctrine is granted by courts only "sparingly."  *See Robertson*, 624 F.3d at 784.  Moreover, "although 'the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run,' the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011)(quoting *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir.2002)).

In order to be entitled to equitable tolling, a habeas petitioner must establish (1) that he has

---

[10]  Howard does not argue that the limitations period should commence at a later date because (1) he was prevented from filing his Petition due to an impediment created by State action in violation of the Constitution or laws of the United States; or, (2) a constitutional right asserted in the Petition was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. *See* § 2244(d)(1)(B), (C).

been pursuing his rights diligently, and, (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 130 S.Ct. at 2565. *See also Hall,* 662 F.3d at 749; *Griffin,* 308 F.3d at 653. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum diligence." *Holland*, 130 S.Ct. at 2565. That being said, the Sixth Circuit has held that excessive delays in filing lack appropriate diligence. *See e.g. Keeling v. Warden*, 673 F.3d 452, 463-64 (6th Cir. 2012); *Vroman,* 346 F.3d at 605 (stating that a court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights").

In the instant case, Respondent argues generally that "[e]quitable tolling is not alleged or demonstrated to excuse the untimely filing of the petition." (Doc. No. 9 at 12.) Although Howard did not file a Traverse, he does state generally in the Petition as follows: "Please be advised that since the first hurdle of Habeas Corpus is to not be time barred or timely filed, Petitioner has furnished all parties with the attached exhibits of Due diligence, via Good Cause (if) perceived to be filed late. Please see all Exhibits." (Doc. No. 1-1 at 2.)

Howard does not direct this Court's attention to any particular Exhibit, nor does he explain how any of the attached Exhibits demonstrate that he was diligent in pursuing his rights. In light of Howard's *pro se* status, however, the Court has conducted its own review of the Exhibits attached to the Petition in an attempt to understand the basis for his claim of diligence. Many of the Exhibits consist of letters between Howard and his trial counsel, William Summers, in which Howard repeatedly requests that Mr. Summers provide him with copies of certain documents and materials relating to his case. (Doc. No. 1-1 at 7-13.) These letters (dating from May 2009 to December 2011) indicate that Howard requested Mr. Summers provide him with copies of (1) certain 911 recordings; (2) statements of Rondalyn Wynn from April and July 2006; (3) statements of witnesses

-16-

Dennis Edwards and Donald Drake; (4) the State's Response to Howard's Motion for Discovery; (5) the Grand Jury Transcript; (6) transcripts of testimony from an unidentified detective; and, (7) "transcript of 4/26/07." (Doc. No. 1-1 at 7, 8, 12.)

Howard also attaches a Grievance he filed against Mr. Summers with the Disciplinary Counsel for the Supreme Court of Ohio in November 2011.  (Doc. No. 1-1 at 14-16.)  Therein, Howard complains that Mr. Summers's failure to provide Howard with "items of evidence & evidentiary files" has prevented him from exhausting his legal remedies.  (Doc. No. 1-1 at 14-16.)  In a letter dated December 20, 2011, Senior Assistant Disciplinary Counsel Joseph Caliguiri indicates he discussed Howard's grievance with Mr. Summers and "[a]lthough Attorney Summers has provided you with a copy of your file, he did not send you copies of the 911 recordings.  He and I discussed this matter and he has agreed to forward the recordings to you.  Given this information, we have elected to cease further investigation of this matter." (Doc. No. 1-1 at 17.)

In addition, Howard attaches copies of his pre-trial motion for disclosure of exculpatory evidence, motion for order granting defendant grand jury transcript, and motion to compel discovery.  (Doc. No. 1-1 at 19-58.)  Finally, Howard attaches two affidavits to the Petition, both of which are signed by him.  In the first affidavit (dated November 17, 2011), Howard avers as follows: "My prior attorney (William Summer), was ineffective as trial counsel for the following reason: 1. Mr. Summer failed to present an alibi witness to the court prior to trial which is substantiated by a witness, when he claimed he could not find her.  (See affidavit attached from Stefanie Wells),[11] this affidavit is duly sworn and authentic, and she is willing to testify at the hearing upon request." (Doc. No. 1-1 at 59.)  The second affidavit is dated January 18, 2012, and

---

[11]  There is no affidavit from Stefanie Wells attached to the Petition.

appears to have been attached to an unidentified motion for extension filed in state court.  Therein, Howard avers that "this motion for extension is in good faith and is supported by the respected legal clause of good cause for thereto.  That petitioner will be diligently preparing the habeas corpus that is his right to ascert [sic], upon the issues of law in support." (Doc. No. 1-1 at 60.)

The Court finds these Exhibits do not demonstrate either that Howard was diligent in pursuing his rights, or that "some extraordinary circumstance" prevented from timely filing his habeas petition.  It appears Howard is arguing that any untimeliness in filing his Petition should be excused because of his attorney's failure to provide him copies of documents relating to his underlying criminal case.  The Court rejects this argument.  As an initial matter, the correspondence attached to the Petition indicates that, by the end of 2011, Howard had received a copy of his entire file from Mr. Summers, including the requested 911 recordings.  (Doc. No. 1-1 at 13, 17.)  Giving Howard the benefit of the doubt and assuming the statute of limitations did not expire until March 26, 2012, he still had over three months to file his habeas petition after receiving his legal materials from Mr. Summers.  The fact that he did not do so indicates a lack of diligence.

Moreover, even assuming Howard did not receive all of the documents he requested prior to the expiration of limitations period, the Court finds equitable tolling would not be appropriate. Indeed, the Sixth Circuit recently refused to equitably toll the habeas limitations period under similar circumstances.  In *Hall v. Warden, Lebanon Correctional Inst*., 662 F.3d 745 (6th Cir. 2011), the Court held as follows:

> Hall's principal argument before the district court in support of equitable tolling was that his lack of access to the trial transcript prevented the timely filing of his habeas petition. This is also the issue that was identified in the COA granted by this court.

-18-

Standing alone, however, the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling. *Inglesias v. Davis*, No. 07–1166, ––––Fed.Appx. ––––, ––––, 2009 WL 87574, at *2 (6th Cir. Jan. 12, 2009) (unpublished opinion) (holding that the petitioner's lack of access to the trial transcript and his limited ability to speak English did not warrant the equitable tolling of AEDPA's statute of limitations); *see also Lloyd v. Van Natta*, 296 F.3d 630, 633–34 (7th Cir.2002) (per curiam) (holding that the petitioner's inability to obtain the trial transcript is not grounds for equitable tolling); *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir.2002) (holding that the court's delay in furnishing the petitioner with the trial transcript is insufficient to justify equitable tolling); *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir.2001) (same as Lloyd ). The courts have reached this conclusion because access to the trial transcript—although understandably helpful to petitioners—is not necessary to file a habeas petition, as was demonstrated in the present case by the fact that Hall ultimately filed his petition without ever having received the transcript.

A habeas petition must "specify all the grounds for relief" and "state the facts supporting each ground." 28 U.S.C. § 2254, Rules Governing Section 2254 Cases, R. 2(c). But nowhere do the rules require the petitioner to submit a copy of the trial transcript. If anything, the rules seem to envision that petitioners may at times have to file their petitions without having had access to the state-court record. The rules require the state to furnish the petitioner with the record once a habeas petition has been filed, and to "attach to [its] answer parts of the transcript that [it] considers relevant." *See id*. at R. 5(c). Further, the state must provide additional material upon request from the judge. *See id.* These rules indicate that a lack of access to the trial transcript is not the kind of "extraordinary circumstance" that stands in a petitioner's way and prevents a timely habeas filing. *See Holland*, 130 S.Ct. at 2562.

*Hall*, 662 F.3d at 750-751.

Similarly, herein, Howard was not prevented from filing his habeas petition simply because he may not have had access to all of the state court documents he had requested from Mr. Summers. Even without the transcripts or witness statements he requested, Howard clearly knew what took place at his trial and was not prevented from formulating his grounds for relief.  As in *Hall*, "[t]here is simply no reason why [Howard] could not have submitted on or before [March 26, 2012] what he ended up submitting on [June 18, 2012]."  *Hall*, 662 F.3d at 751.  Moreover, the Court notes that

-19-

Howard's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and to excuse his late filing. *Id.* at 751-52. *See also Keeling,* 673 F.3d at 464.

In light of the above, the Court cannot find that Howard was diligent or that any "extraordinary circumstance" prevented him from meeting the filing requirements. Accordingly, Howard is not entitled to the benefit of equitable tolling.

### D.  Actual Innocence

In *McQuiggan v. Perkins*, — U.S. ----, 133 S.Ct. 1924, 1928 (2013), the United States Supreme Court recently held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling but, rather, a request for an equitable exception to § 2244(d)(1). *Id.* at 1931. For the actual innocence exception to apply, a petitioner must "support his allegations of constitutional error with new reliable evidence  – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The Supreme Court explained, however, that "tenable actual-innocence gateway pleas are rare" and that "'[a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggan*, 133 S.Ct. at 1928 (quoting *Schlup*, 513 U.S. at 329). In making this assessment, "'the timing of the [petition]' is a factor bearing on the 'reliability of th[e] evidence' purporting to show actual innocence." *Id.* (quoting *Schlup*, 513 U.S. at 332).

In the instant case, Howard does not appear to argue that he is actually innocent. Although he

-20-

claims throughout the Petition that he was deprived of a fair trial, he does not clearly assert a claim of actual innocence.  In one of the Exhibits attached to the Petition, however, Howard does make fleeting, unexplained mention of an "alibi witness" who he claims was not subpoenaed at trial due to the ineffectiveness of his trial counsel.  (Doc. No. 1-1 at 59.)  To the extent this isolated reference can be liberally construed as an assertion of actual innocence, the Court finds it is insufficient to warrant an equitable exception to AEDPA's statute of limitations.  Howard has not come forward with any evidence, much less new and reliable evidence, that he is actually innocent.  Thus, the Court finds Howard has not demonstrated he is entitled to the actual innocence exception under the circumstances presented herein.

Accordingly, and in light of all of the above, it is recommended the Court find the instant Petition is time-barred under § 2244(d)(1).

## IV.   Procedural Default

Even if the Petition were not time-barred, Howard's claims would nevertheless be subject to dismissal because he failed to fairly present them to the state courts on either direct appeal or collateral review, and state court remedies are no longer available to him because he failed to use them within the required time period.  Thus, Howard's claims are procedurally defaulted.

In order to obtain federal review of his habeas claims, a petitioner must exhaust all available state judicial remedies with respect to each issue raised in his or her federal habeas petition.  *See* 28 U.S.C. § 2254(b), (c); *Rose v. Lundy*, 455 U.S. 509 (1982).  Exhaustion is fulfilled once a state supreme court provides a convicted defendant an opportunity to review his or her claims on the merits.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).  The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994);

*Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

    If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has

not occurred and the federal habeas court cannot entertain the merits of the claim.  28 U.S.C. §

2254(c). *See also Rust*, 17 F.3d at 160.  Rather than dismiss certain claims the Court deems

unexhausted, however, a habeas court need not wait for exhaustion if it determines that a return to

state court would be futile.  *Lott v. Coyle*, 261 F.3d 594, 608 (6th Cir. 2001).  In circumstances

where the petitioner has failed to present a claim in state court, a habeas court may deem that claim

procedurally defaulted because the Ohio state courts would no longer entertain the claim.  *Buell v.

Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).  *See also Rust,* 17 F.3d at 160 (stating that "[i]f no

remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion

problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse

the failure to present the claim in the state courts").

    Federal courts will not consider the merits of procedurally defaulted claims, unless the

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to

review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*,

440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may

become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim

by failing to comply with state procedural rules in presenting his claim to the appropriate state court.

*Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to

comply with the procedural rule, the state court declines to reach the merits of the issue, and the

state procedural rule is an independent and adequate grounds for precluding relief, the claim is

procedurally defaulted.[12]  *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures."  *O'Sullivan,* 526 U.S. at 848.  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted.  *Engle v. Isaac,* 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition."  *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court.  To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising

---

[12]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-23-

under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust*, 17 F.3d at 161-62.  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman,* 501 U.S. at 749-50.  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with

-24-

new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324 (1995). *See also Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

With these principles in mind, the Court finds that each of Howard's four Grounds for Relief are procedurally defaulted.  Howard failed to fairly present any of his habeas claims in state court. Ground One claims the testimony of Ms. Wynn constitutes hearsay; is inconsistent with the testimony of other witnesses; is untruthful; and, presents only circumstantial evidence of Howard's guilt.  (Doc. No. 1-1 at 3.)  Ground Two alleges ineffective assistance of trial counsel based on the allegations that defense counsel (1) fell asleep at trial; (2) arranged for his wife to send unidentified eye witnesses unspecified gifts; and, (3) failed to subpoena Ms. Wells.  (Doc. No. 1-1 at 3-4.) Ground Three (entitled "Withheld Exculpatory Evidence/Witness not subpoenaed at trial) also appears to relate to the fact that Ms. Wells did not testify at trial, although it is unclear if this claim is intended to raise an IAC claim, an independent claim under *Brady v. Maryland,* 373 U.S. 83 (1963), or both.  (Doc. No. 1-1 at 4.)  Finally, Ground Four (entitled "Violation of Due Process/14th Amendment and 6th Amendment by Prosecutor, Trial Attorney, and Judge") appears to allege general, unspecified claims of prosecutorial misconduct and ethical violations by his defense attorney and the trial court judge.  (Doc. No. 1-1 at 4-5.)

Howard did not raise any of these claims in his direct appeal to the state appellate court or his subsequent appeal to the Ohio Supreme Court.  As set forth *supra*, Howard raised only one claim in these courts, in which he challenged the sufficiency of the evidence to sustain his conviction and trial court error in denying his Crim. R. 29 Motion for Acquittal.  (Doc. Nos. 9-9 at 2; 9-15, 9-16.) This claim made no mention of any the various grounds for relief set forth in Howard's habeas

-25-

Petition.  Moreover, Howard has not pursued post-conviction relief under Ohio Rev. Code §

2923.21 or sought to re-open his appeal pursuant to Ohio App. R. 26(B).  As the Ohio Supreme

Court denied him leave to appeal over three years ago, on June 23, 2010, the time for Howard to

timely seek relief under either § 2923.21[13] or Rule 26(B)[14] is long expired.  Further, there is nothing

in the Petition suggesting that a state court remedy would be now available to Howard, at this late

date, to raise any of his habeas grounds for relief.  Thus, the Court's finds Howard's habeas claims

are procedurally defaulted.

Moreover, Howard has failed to demonstrate either cause or prejudice sufficient to overcome

the procedural default.  Giving the Petition a liberal construction, Howard appears to argue that his

failure to raise his habeas claims on direct appeal should be excused because of the ineffectiveness

of his appellate counsel, who also represented him at his second trial.  (Doc. No. 1-1 at 2.)

Ineffective assistance of counsel may serve as "cause" for a procedural default if it rises to the level

---

[13]  Pursuant to Ohio Rev. Code § 2953.21(A)(2), a petition for post-conviction relief must
be filed no later than 180 days after the date on which the trial transcript is filed in direct
appeal proceedings.  A state court is permitted to consider a petition filed after this
deadline has expired if (1) the petitioner shows that he "was unavoidably prevented from
discovery of the facts upon which he must rely to present the claim for relief" or "the
United States Supreme Court recognized a new federal or state right that applies
proactively to persons in the petitioner's situation, and the petition asserts a claim based
on that right;" and (2) the "petitioner shows by clear and convincing evidence that, but
for constitutional error at trial, no reasonable factfinder would have found [him] guilty of
the offense of which [he] was convicted."  Ohio Rev. Code § 2953.23.  Howard has not
set forth any facts in his habeas petition that suggest he would be able to meet
these stringent requirements.

[14]  Pursuant to Ohio App. R. 26(B), "[a]n application for reopening [based on a claim of
ineffective assistance of appellate counsel] shall be filed in the court of appeals where the
appeal was decided within 90 days from the journalization of the appellate judgment
unless the applicant shows good cause for filing at a later time."  Again, Howard has not
set forth any facts in his habeas petition suggesting good cause for his failure to timely
re-open his appeal under this Rule.

of a constitutional violation. *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir.2002).  In fact, a "claim of ineffective assistance of [appellate] counsel ... can serve as both cause and prejudice, excusing a procedural default in an underlying substantive claim." *Franklin,* 434 F.3d at 418.  However, in order to excuse a default, the ineffective assistance of counsel claim must not *itself* be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000) ("[A] procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim *only if* the habeas petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective assistance claim itself") (emphasis added). *See also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012);  *Paluskas v. Bock*, 410 F.Supp.2d 602, 608 (E.D. Mich. 2006).

Here, Howard has made no attempt to raise an ineffective assistance of appellate counsel claim in state court.  He has not attempted to re-open his appeal pursuant to Ohio App. R. 26(B), and there is nothing in the Petition indicating cause or prejudice to excuse his failure to do so.  Thus, Howard's ineffective assistance of appellate counsel claims are themselves procedurally defaulted and may not serve as cause or prejudice to excuse the default of any of the habeas claims set forth in the Petition.  *See Edwards*, 529 U.S. at 450-451.

Finally, Howard has not come forward with any new or reliable evidence of actual innocence.  As discussed *supra*, to the extent the Petition is liberally construed to assert such a claim,  Howard has not submitted any evidence that he is actually innocent.  *See Schlup*, 513 U.S. at 324.

Accordingly, and in light of the above, it is recommended the Court find that, in addition to being time-barred, Howard's habeas claims are procedurally defaulted.

## V.  **Sufficiency of the Evidence**

Giving the *pro se* Petition a liberal construction, Howard's First Ground for Relief challenging

the admission of Ms. Wynn's testimony could potentially be construed as raising the argument that

his conviction was against the manifest weight of the evidence and/or not supported by sufficient

evidence.[15]  (Doc. No. 1-1.)  To the extent the Petition raises a manifest weight of the evidence

claim, it is rejected on the grounds that such claims are not cognizable on federal habeas review.[16]

*See, e.g.*, *Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin,* 2006 WL

2090093 at *6 (S.D. Ohio 2006).

To the extent Howard raises a sufficiency of the evidence claim, the Court finds it to be

without merit.  The state appellate court considered Howard's sufficiency claim on direct appeal

and rejected it as follows:

> Howard argues that the trial court should have granted his motion for acquittal
> because the evidence was insufficient to support his convictions. We disagree.
> The sufficiency of the evidence standard of review is set forth in *State v.*
> *Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.

------------------------

[15]  Howard also suggests that he is challenging the sufficiency of the evidence in his
Motion to Stay Proceedings for Further Discovery, which was filed on January 10, 2013
and denied the following day.  *See* Doc. No. 10 at 2.

[16]  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a
claim that a verdict was against the manifest weight of the evidence-as opposed to one
based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror'
and review the entire record, weigh the evidence, and consider the credibility of
witnesses to determine whether 'the jury clearly lost its way and created such a manifest
miscarriage of justice that the conviction must be reversed and a new trial ordered.'"
*Hess v. Eberlin,* 2006 WL 2090093 at *7 (S.D. Ohio 2006), *quoting State v. Martin*, 20
Ohio App.3d 172,175, 485 N.E.2d 717 (Ohio Ct. App. 1983).  Because a federal district
court does "not function as an additional state appellate court, vested with the authority
to conduct such an exhaustive review," this Court cannot consider whether Howard's
conviction was against the manifest weight of the evidence.  *Id.*

"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *See, also, State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394; *State v. Davis* (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966.

*Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus in which the Ohio Supreme Court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"

After reviewing the evidence in a light most favorable to the state, we find that the evidence could convince a rational trier of fact that the state had proven beyond a reasonable doubt each element of the charge of murder, having a weapon while under a disability, and firearm specifications.

In the instant case, the evidence demonstrates that Howard was in the parking lot immediately before the victim was killed. Howard was seen fleeing the scene by Edwards and Wynn. Both Edwards and Wynn testified that they witnessed Howard coming from the area where the victim was immediately after the shooting. Edwards also testified that Howard told him that the person in the truck tried to rob him. Howard was also seen in the parking lot by Drake immediately before gunshots were heard.

In addition to the testimony above, there is evidence that Howard threatened Wynn on at least two occasions. Wynn testified that Howard told her that he would kill whoever is snitching on him and Wynn further testified that she received two messages from Howard immediately after the F.B.I. came to the apartment building questioning witnesses and looking for him. Wynn also testified that Howard indicated that Wynn needed to find him before he found her. Moreover, Howard told Wynn that he killed Sturdivant over a $200.00 debt.

Although Howard was not seen with a firearm, there is evidence establishing that he was seen in the parking lot immediately before and after the murder. Howard immediately tried to get in contact with Wynn, an eyewitness, right after the F.B.I. came looking for him. Howard admitted to killing Sturdivant, and threatened to kill anyone who snitched on him.

While the evidence in the case at bar is circumstantial, it has enough weight to convict appellant. Direct evidence of fact is not required and circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence. *State v. Jackson* (1991), 57 Ohio St.3d 29, 565 N.E.2d 549.

Circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, and thus all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt. *State v. Tierney*, Cuyahoga App. No. 78847, 2002-Ohio-2607.

Consequently, viewing the evidence in the light most favorable to the state, we conclude that any rational trier of fact could have found that the state proved all of the essential elements of the instant charges beyond a reasonable doubt. Thus, the trial court properly denied Howard's motion for acquittal.

Accordingly, Howard's assignment of error is overruled.

*State v. Howard*, 2010 WL 376811 at * 3-4.

Respondent argues Howard's murder and weapons under disability convictions were supported by sufficient evidence in light of "the testimony of Drake, Wynn, and Edwards, Howard's conduct following the shooting, the statements made by Howard regarding the victim trying to rob Howard, and Howard's admission to Wynn that Howard had killed the victim." (Doc. No. 9 at 24.)

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a

-30-

conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979). In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses. *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983). Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury – not the court– to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ----, 132 S.Ct. 2, 4, 181 L.Ed.2d. 311 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. ----, -----, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would

conclude that petitioner . . . is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in *its* conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original)(citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

Upon careful review of the trial transcript, the Court finds the state appellate court reasonably determined that Howard's murder and weapons under disability convictions were supported by sufficient evidence.  In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law.  As noted in the state appellate court opinion, Mr. Drake testified that he saw Howard in the parking lot immediately before the victim was shot.  (Tr. 131.)  Ms. Wynn testified that she saw Howard in the parking lot immediately after the victim was killed and, further, that he was running away from the area where the victim was located.  (Tr. 42-44, 75.)  She also testified that she had known Howard for many years and could identify him because his hoodie was pulled away from his face as he ran from the scene.  (Tr. 44, 47-48.)  In addition, Ms. Wynn testified Howard told her he killed the victim over a $200 debt. (Tr. 62-63, 75.)  Mr. Edwards testified that, immediately after the shooting, Howard was seen coming from the area where the victim was located.  (Tr. 203.)  He also testified that he recalled Howard saying words to the effect of "dude tried to rob me," although he later stated he wasn't entirely sure about that as he had been smoking marijuana on the night of the murder.  (Tr. 203, 215-216.)

While Howard questions the credibility of this testimony (particularly the testimony of Ms.

-32-

Wynn), the state appellate court was not unreasonable in determining that it was sufficient to support a finding that Howard was the shooter in this case.  Based on the above and applying the "double deference" required under the AEDPA, the Court is unable to say that the state appellate court's decision "was so unsupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S.Ct. at 2065.

Accordingly, to the extent the Petition can be construed as raising a sufficiency of the evidence claim, the Court finds it is without merit.

## VI.  Conclusion

For the foregoing reasons, it is recommended that the Petition be DENIED.


                                              /s/ *Greg White*
                                              U.S. Magistrate Judge


Date: July 22, 2013


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-33-